Good morning, Your Honors, and may it please the Court, my name is Benjamin Leonard. I'm a third-year law student at the University of Virginia, and I'm arguing on behalf of Mr. James Grill. My colleague, Lauren Emrick, will be arguing rebuttal, and we'd like to reserve seven minutes for her. Mr. Grill's property is surrounded by the Tahoe National Forest. For about ten years, from 1998 through 2007, Mr. Grill possessed a right of access through a Forest Service-issued special-use permit. That permit expressly stated that it will be reissued for successive periods of ten years, so long as he still needs the road for the purposes for which the permit is granted. But in 2008, the Forest Service refused to reissue that permit. Mr. Grill brought this quiet Title Act suit to vindicate and clarify his access rights. We have three- Well, did it refuse to reissue it or put conditions on reissuing? No, Your Honor, I understand the government's position to be that they refused to reissue the permit, which they made clear in their April letter when they said that any- Well, unless you do X. Yes, Your Honor, but in Grill's, in Grill's, our submission is that the Forest Service's permit vested in Grill an easement that was subject to conditions. One of those conditions was that he comply with the various regulatory schemes, and he did that, Your Honor, throughout this whole period of time. Do you think it was the permit that vested the easement rather than the ANILCA right of access and the other rights of access? Yes, Your Honor. Our, our theory of this case is that ANILCA grants Grill a statutory right of access to his land, but that the permit is the embodiment of that easement, which makes sense based on the text of the permit, which grants him a right of way over this, this road. I don't understand that. I mean, I, I, I thought your argument was that ANILCA recognized a, maybe a right that just exists in the world in property, but at least it statutorily exists under ANILCA. But you would have said that existed without the permit too, right? I, I, I don't understand why the permit creates the easement now. It seems like ANILCA creates the easement. ANILCA, we agree, creates an easement, but our theory of this case is that the permit granted to Grill an easement that was subject to reissuance every 10 years. Because- But if you already have the easement, what does that add? It adds, it adds an irrevocable right that the Forest Service can't take away this easement. But ANILCA already gave him that right? ANILCA gave him that right, but it's the Forest Service's position that they've taken away this easement and they've denied that he has a right of access. Well, I think they took away the permit. They took away the permit, and I guess that is kind of the core issue in this case. Our theory is that the permit was an easement. The government says that it's not. But if the permit's not an easement, I don't understand how Mr. Grill could have a right of access to his land, given that he would have to go through this whole other process now that they've terminated his- Well, right now. He doesn't have the permit right now, but I assume he's allowed to walk to and from his land right now. Is that right? That is our understanding, that he's allowed to walk. But ANILCA, the statute and the implementing regulations make clear that in-holders have a right of access that's similar to how- that includes vehicle access, and the court made that clear in Adams. For Grill to reasonably enjoy and access his land, he has to be able to go to it with a vehicle. And so you may have an argument that that's actually the scope of the easement, but I this appeal, as I understand it, is only asking us to say you have some easement. Is that right? That is certainly part of this appeal. I mean, I think the core issue in this appeal, Your Honor, goes to the statute of limitations issue, and not so much the merits. Well, aren't they intertwined? Because at the bottom, this single question goes to both of That is, is there a right of access that's separate from the permit? And if so, did the government ever deny it? Or did it deny it within a limitations period? Yes, Your Honor. I grant that these questions are intertwined, but on this motion to dismiss, Mr. Grill has adequately pled that the government did not deny his access or the existence of an letter. The magistrate judge took judicial notice of two letters back when this issue was jurisdictional. And those letters, by their plain text, just don't make clear that the Forest Service was either not going to reissue his permit, or that they denied that he had a right of access to his land. That didn't come much later. But so if we agree with you, and we think that it's not until the later letter that there's some question about whether he still has an easement. I mean, I have a question for the other side about whether there's even adversity here, because I think maybe they actually agree there's an easement. But let's put that aside. Assuming we agree with you, there's no statute of limitations problem. All that you get from that is you can assert some claim to an easement, but you're not asking us to determine the scope of it, are you? No, Your Honor. We would urge the court to remand for the district court to conduct that review in the first instance. And the government actually agrees with that. In its initial opening brief in this case, it said that ordinarily, you know, appellate courts don't find facts in the first instance. And so if we agree with you, the case isn't time barred, so you can seek some, and maybe we could even say you have some easement under ANILCA, and then remand to figure out everything else. Is that what we should do? Yes, Your Honor. I think so. And if we were going to do that, do you need any of your other theories? Like if we say there is some easement under ANILCA, and it's not time barred, go back down to the district court to figure out everything else. Do you need us to reach any of the other theories of easement? Yes, Your Honor. Well, I don't, I would not urge this court to find any other theories of easement. I mean, we think that... No, not yet. No, you don't need us to do anything else. Oh, apologies. Yes, I misunderstood. We do not need this court to do anything else other than reverse and remand for the district court to figure it out. One other thing is, you know, you say, you seem to say that it was the license or the permit that created the easement and that it was essentially in perpetuity. But it says, at the time of reissuance, the terms and conditions may be modified under the conditions or stipulations and at the discretion of the Forest Service. So it's not that they're going to reissue the same permit. They never promised that. Yes, Your Honor. But they terminated the permit and refused to reissue it at all. Because he wasn't willing to go to comply with our condition, which was to have further NEPA inquiries. No, Your Honor. And I think that Mr. Grill's attorney's letter from February 2008 makes this clear. In 2006 and 2007, Mr. Grill was actively working with the Forest Service to go through the various regulatory processes to get this bridge built. The Forest Service ultimately approved those plans and then decided all of a sudden in October that they would the record does not reflect whether what actions Mr. Grill took after that point, but it's our submission that he was going to build the bridge. They cut it off and they did not clarify until much later that they didn't think he had an easement or a right of access at all. And that's why there's so many facts in this case that have not come out. And that's why the government actually denied that there was an easement at all. So that's at Supplemental Excerpts of Record, I believe, 32, paragraph 36, on April 2nd, the defendants denied plaintiff the use of his ANILCA permit. That's the much later. It's just six months later. That's right. But that means that this action is not time barred and that it should be remanded for further consideration by the District Court. I have one completely off-point question. What goes on? What's he do? Does he have a house there, a cabin, or what's going on? Yes, Your Honor. He lives on the property. Okay. Just curious. Thanks. Yes. I see that I'm out of time. If Your Honors don't have further questions, we'd ask for a reversal and a remand. Thank you. Thank you. Good morning, and may it please the Court, Kevin McCardle on behalf of the United States. The District Court correctly held that Mr. Grill's QTA claim is time barred. That decision can be affirmed under Rule 12b-6 standards, and the District Court's judgment should be affirmed in any event, because Mr. Grill has failed to state a viable easement claim that's cognizable under the QTA. Now, just to interrupt for a minute, I found it interesting that you haven't claimed any issue or claim preclusion, just by the fact that this is actually a thorough investigation. Well, I think the first lawsuit was dismissed for lack of standing. Oh, it was lack of standing because he was found not to have been foreclosed upon. That's a fact. I don't actually know whether the rules about how lack of standing and preclusion interact apply to essentially facts. Potentially, there could be an issue preclusion, not a claim preclusion. The foreclosure thing ended up being wrong, right? Or at least half wrong? I wouldn't say that, no. There's no evidence that he owns any of the property. Even now? We've not seen any evidence that he owns any of the property in his own name. At a minimum, you know, that's a factual issue. But he's alleged that, for purposes of the complaint, we have to assume he has some of this property, right? Well, yeah, he alleges that he holds some unspecified title and titled interest in the property without specifying what it is. I think that's paragraph 11. He says he holds a titled interest in the property, but he's careful not to say what it is because all the records suggest that even Lot 1 is owned by an LLC, which is a distinct entity under California law. But again, that's an issue that, you know, would come into play if there are going to be even more proceedings in this case. Go ahead. So the key issue for determining statute of limitations and when the claim accrued is adversity or a conflict. It depends when the government first takes an action that's inconsistent with the claimed easement rights. So if you go through some of the key cases like Mitchell, in that case the government said, hey, your claim is time-barred because you've known for decades that we own the servient estate. And the court said, but that doesn't necessarily conflict with his claim that he holds an easement. If you go to McFarland 1, we said. So can I just, we know what the cases say, I think. So today we can put aside everything that people have said in the past, but today the position is he has some easement. Are you disagreeing with that? Our position is not that he has an easement. We've stated this in the April 2008. Not that he does or not that he does not. No, he doesn't have an easement. What he has is a conditional right of access. If he's still an inholder and has no other adequate means of access. If he meets those things, he has a statutory right of access. Doesn't our case law treat those statutory rights of access as easements? Property rights? I think there's some language along those lines in Adams 1, but in Adams 2, the court was very careful to say he has only a conditional right of access. He has to comply with the rules and regulations. Right, but he still has an easement for access. It might be regulated, but he has an easement, right? He only has it if he complies with the applicable permitting requirements. He doesn't have a property right right now because he hasn't complied with the condition of getting a permit. Okay, so you're saying let's just assume for these purposes that he owns some bit of land that he lives on. I know you might disagree with that, but I think if we construe the complaint that way, he lives on a bit of land that's surrounded by Forest Service. Are you saying he can't even walk to it? No, he can walk to it. Okay, so he has an easement, some sort of easement. No, because you can walk through a national forest without having an easement. Okay, well, but the Forest Service could put up fences for other people, but they can't put up fences for him. That's true. Let's put it this way. He has the same right as any other member of the public to walk across Forest Service land. But an even bigger one, because for other people, you could put up fences, but you can't stop him from getting to his bit of land. If there's no general restriction on crossing Forest Service property, he's free to walk across it. The problem comes in when he needs greater access than what's available to the public like he does here. He wants to build a bridge. He wants to develop the road. I understand that you might have reasons he can't develop a bridge or a road, but are you really denying that he has some easement to get to this land? He does not have an easement to get to the land. He has a statutory right of access that's conditioned on compliance with the permitting requirements. He has a conditional right of access. The right of access, I mean, this kind of sounds like you say tomato, I say tomato to me. Right of access, that's easement. I mean, that's what that is. Whether it's statutory or whether it's common law, it's an easement if you have a right of access, right? If the statute says you have an easement or a right of access, if you do X, you need to do X to get the easement. I mean, maybe it's just semantic. He's got a regulated easement, okay. Yeah, well, okay, that raises another issue. If there's no dispute, and you might have been getting at this, Judge Friedland, if he agrees now, if his claim is, I have a right of access under ANILCO, call it an easement, call it a statutory right of access, so long as I get a permit. If that's his claim, then there's no adversity because that's what we've been saying since 2007. But it seems like at some point along the way, you started using this confusing language that you're using today. He thinks he has an easement. At one point, you said, yes, you have an easement, but you have to regulate it. Then you started saying you don't have an easement, which you just said to us, so no wonder he's confused. I don't think our position has been consistent in every single document. We've said you have a right of access, but you have to comply with the permitting requirements and the regulations. That's entirely consistent in every document. Well, it seems like they're agreeing with that now. Maybe he didn't agree with that before, but it seems like everyone is agreeing with that, but now we've got to figure out the scope of it. And you were saying it's time for him to even figure that out. Well, I'd be astonished if he agrees that he has to seek a new permit. I mean, that's been the problem for the last 17 years. Well, I think his briefs now say he realizes he needs to do that. His claim is yes. It appears to go very far in that direction. And if that's true, if he's here today saying, I hold an easement, provided that I comply with permitting requirements, then he may have an adversity problem. There may be no adversity that's necessary for a QTA claim. But that's not what he pled in the complaint. The complaint is very clear. It came on the heels of his takings claim when the court said, you don't have a takings claim because you haven't applied for a new permit and it hasn't been denied. At that point, he had two options. Apply for the permit or bring this QTA claim. And he brought the QTA claim, the entire point of which is to establish this alleged property right to use the historic road and to cross Scotchman Creek without getting a new permit and without any form of management by the Forest Service. That's clear from virtually every paragraph of the complaint. That's the claim that he brought. Now, that claim is time-barring because we denied access in October 2007. That letter denied him access over Scotchman Creek with vehicles until he got a new authorization. And that letter wasn't vague. It wasn't confusing because it was the centerpiece of both of his prior lawsuits. He came in the CFC, the Court of Federal Claims, and said, that letter, by denying me access without a new authorization. It wasn't a forced conclusion. It didn't because it didn't deny him access. It's not. I wonder why you don't have a preclusion problem. No, it did deny him access until he got a new permit. But he said it wasn't a final decision denying him access. Because we gave him the option of applying for a new permit. And in fact, in Adams 2, the Court made the same point. It said, when the Forest Service subjects your land to a permitting requirement, it's not a taking because of the possibility that you might get the permit. So, going back to the initial point of adversity, there was clearly adversity in October 2007. Let me read from the Federal Claims decision. The court concludes that Grill never received a final decision from the Forest Service regarding the extent of permissible access to the property. None of the agency's actions imposed definable limits on Grill's access or foreclosed the possibility that he permitted access if he applied with the so why isn't that conclusion binding on you as well now and says that there is no, there was no denial of access as such up to this point? Well, I think the last second, the last sentence is pretty important. It says, provided that he complies with applicable permitting requirements. And the court also said, you know, we reimposed the permitting requirements that he, with which he was always required to comply. So the adversity here all comes down to the issue of whether he has to get a new permit or not. That's been the problem to get access back. That's been the problem since 2007. And we told him that he needed to get a new permit in that letter. At most, the Forest Service eliminated a single bridge design which did not narrow the scope of Grill's access in a definable manner. The Forest Service exercise of discretion rejected a single bridge design, not an entire right of access. So, I mean, I started by asking you about preclusion. Why isn't this preclusion? Well, because the court goes on in that case, and we quote from it in our brief, you know, it says, they denied... The Forest Service never terminated Grill's alleged easements to the extent that they existed. Right. It reimposed the permitting requirement, though. Reimpose the what requirement? The requirement that he get a new permit. I mean, there's no question that the letter denied him access. That's what it says, and that's what it did. He hasn't accessed the property since then, and there was no subsequent denial of access in April 2008. He denied him access until he got a new authorization. And it's interesting because if you look at that April 2008 letter, it doesn't really add anything new. It reiterates that his permit expired in 2007. It says he's going to need a new EA, which is what the October 2000 letter said. It said the EA would have to address the amended forest plan and new species, which the October letter said. And that's basically it. It was the October letter that denied access and first imposed the requirement that he get a new authorization. And because that conflicts with his claim, you have the necessary adversity at that point. Now, it would be different if he had some other easement claim. If he agrees, like I said initially, if he agrees that he needs to get a permit, then it's a different story. But we have to go with the claim that's pledged. And the claim that's pledged is I have a right to use this road without getting a new authorization and without subject to your management approval. And he was on notice that we... If we read the complaint as saying that, but also just saying I have some easement and somehow the his right of access is conditional. If he's an inholder, we've never denied that if he's an inholder, this may just be a semantic thing, but if he's an inholder and has no other right of access, he does have access where the house is on plot one, he has an easement to the road there. Whether that's insufficient and if he still owns the property, he has a conditional right of access provided he complies with the regulations and the regulations require a permit. The statute says that the secretary shall grant a right of access subject to... So I guess this is another way of asking the adversity thing, but if he wins or loses this case, does it make any difference? I mean, he still has the ANILCA right and has to get a permit. He has to get a permit no matter what. So the litigation from... If his objective is to get a ruling that he has a right of access without a permit, the litigation is pointless. If... So he needs a permit to build a bridge, but is there any consequence right now to whether he can walk to his land, to where he says is his land anyway? No, I don't think there's ever been any restriction on walking through public property like any other member of the public can. Why not using the historic road until you get to the bridge? With vehicles, that would trigger the permitting requirements because you need to modify it. But the letter only talks about the bridge. I mean, he says he has access... Because you can't cross the bridge. It doesn't say you can't use the road. Well, you can't use the road to get to the property without crossing Scotchman Creek, and he says there was a historic... Well, he can't get all the way there, but he can get partway there, right? I don't know if he can get partway there in a car, but let's assume so. I mean, that doesn't give him access to the property, which is the essence of his claim. He doesn't want to drive down to Scotchman Creek. He wants to cross it to get to what was formerly his property. And we said in the letter, you can't do that until you get a new permit. That was a conflict. That conflicts with the claim that he's pled in the complaint. It started the clock. Do you have an understanding of... I mean, do you deny that he's using this property right now? I don't know. Based on the facts that I know, he has a house on lot one on the other side of the Yuba River with the separate easement that gives him access to public road. So you think he's getting there a different way right now? If he still lives in that house, he definitely has access to the property. He's trying to get to the part of lot two that's... I'm not sure if I have my directions right, but let's say it's south of the South Yuba River, which runs through lot one. He definitely has access to his house on the north side of the river. He's trying to get to that part on the south side. I want to step back and look big picture just for a second. So the district court did not decide whether he states a claim for denial of an easement. It just decided the statute of limitations question, right? Right. So if we disagree with you in the statute of limitations question, on the rest of it, you're basically asking us, it's your alternative argument that we should dismiss it for a failure to state a claim based on the pro se complaint that he filed before he had counsel, right? Because that's the only complaint there is. It's the pro se complaint that filed before counsel came in on appeal to represent him, right? That's the only complaint. I mean, wouldn't it be fairer, honestly, if we disagree with you on the statute of limitations question, to send it back to the district court to give him a chance to do it again with a lawyer this time now that he's got one? I don't know. He's never requested... Because you're trying to read this complaint in a way that's in the light least favorable to him, which is, of course, the opposite of the standard. I would respectfully disagree. I think every single paragraph of that complaint, nearly, that's an overstatement. Large portions of it make the point that he has an alleged right to use the historic road without... My whole point about pro se, though. I mean, the district court didn't deal with this. Magistrate, judge, whoever it was, didn't deal with this. If we disagree with you on the statute of limitations, isn't the right thing to do to send it back and give him a chance to try again with counsel this time, when somebody maybe gives him legal advice on what the right way to allege it is? It might be if we knew what he was planning to allege. I mean, he has counsel... You never know if somebody's planning to allege until they do it. What is the claim that he wants to pursue? Is it the claim that he has a statutory right of access? Here's my answer to that. I don't know, and neither do you, and that's why the district court should deal with it in the first instance. The remand to the district court to address an unspecified complaint? To give him a chance to amend. But the district court already gave him a chance to amend once. He's got a lawyer. I don't know how many pros... 20% of my caseload is pro se, okay, as a district judge. 20% of it is pro se. The difference between a pro se complaint, even a detailed one like this, and one by a lawyer, it's not night and day. It's like, you know, Jupiter and Alpha Centauri. Right, but I would also point out that in the first case, when he moved for reconsideration, the district judge even there said, we're not talking about your average pro se litigant. He's a pretty savvy litigant, and he's even more savvy now because... Okay, I'm just going to tell you, I got way more experience with you than pro se litigants, and the way more savvy pro se litigant is still eons behind a litigant with a lawyer. I think... Even an average lawyer. He doesn't have average lawyers now. Fair enough, but I think it's also fair to say, well, why are we remanding? To plead what? Just to give him another chance to do what? Because as we talked about initially, no matter what, even if he wins on a common law easement, he's got to get a permit. That's what Fitzgerald Living Trust says. It says, I see I'm over time. I'll just finish up, if I may. It says, your common law easement claim is subject to the permitting requirements. He always has to get a permit. So why are we remanding? What would be the point? He should apply for the permit. That's what we've been saying, and that's what I think would be the fairest result for everybody. I'll give you just a short answer to that. It's that the government's various positions on this over the years have not been a model of consistency, as Judge Friedman was discussing before. That's why. That's the reason. Okay, so that's my... You asked me a question. I've answered it. My time is now up. Thank you. Thank you. So we have time for rebuttal. Good morning, Your Honors. May it please the Court. Lauren Emmerich, also a third-year law student at the University of Virginia, for Mr. Grill. I want to start by clarifying that Mr. Grill does own the property. He alleges it at paragraph 4 in his complaint. He even lists the parcel numbers, 83 and 84, that this is residing within the Tahoe National Forest in Washington, California. And it's clear, actually, that if you look at the map that he attached to his complaint, that there are these two parcels, 83 and 84. 84 is allegedly where he resides and might have outside access. But 83, in order to have a reasonable access to that parcel, you have to cross over forest service land. And so that is the basis for his easement claims here. So paragraph 4 says he resides there. I don't know that it actually says he owns it. Does that matter for an easement? Whether you... I don't actually know the answer to whether he needs to own it or whether living there is enough. Well, frankly, in order for him to have a reasonable use and enjoyment of his property, that's what's required under ANILCA. And because he resides there, in order to have reasonable use and enjoyment of that property, he would have to have reasonable access to get there. The paragraph 5 says he has a titled interest. Now, I'm not sure I know what that means. But if you give the complaint the extra-liberal reading that's required for a pro se letting it, that suggests some... At least suggests ownership. That's right, Your Honor. And he has maintained to this day that he owns the property. And that that has not changed throughout the course of this litigation. And I also want to address the question about preclusion. Because this... He had brought the APA suit previously. But that reached to no final judgment on the merits. Before yourself, Judge Berzon, in his previous lawsuit, that was about a procedural process claim. But now, here, he is trying to vindicate his property rights. Properly within the... Well, what about the language I was reading from the Court of Claims Action, which would run against the government, with regard to whether or not there was ever an actual denial of his right of access? Clearly, that there was no final judgment. And therefore, no takings claim. Because there was never a denial by the agency of his right to access or his easement. So why isn't that preclusive against the government? That's right, Your Honor. That came from his takings claim in the Court of Federal Claims. And it is directly... You never argued a preclusion. Excuse me? Sorry? You never argued a preclusion. No, we didn't initially argue that this was a preclusive issue. But in thinking about it here today, it is directly contrary to the Forest Service's current position, which is that they terminated his right of access in April of 2008. The government appears to maintain that he does not have an easement. In fact, the government was just speaking to the fact that he might have a... Well, we're trying to distinguish, as I understand it, between a statutory right of access and an easement. And there may be something to that. An easement is usually an ascertainable, not just some right of access, but an ascertainable matter of access. Yes, that's right, Your Honor. And that's why Mr. Grill's theory here is that under ANILCA, he has a guaranteed right of access, but it's the permit process, which he is required to go through, according to the Forest Service's own regulations, it's getting that special use authorization that is codifying his rights under ANILCA. That is saying, here is your property right. Here is your right to access your property in this manner. Subject, yes, to reasonable regulations. But that's why his theory is that that permit that he was issued was effectively an easement document. And that's where the adversity in this case comes from. Because as we just heard from the government... If that's true, then why don't you lose the limitations issue? Because the October letter did seem to deny that he would continue to have a permit. Unless he did XY, unless he did certain things. The October 2007 letter was discussing the regulations that are being imposed on him throughout this permitting process, such as getting more environmental assessments done, such as when he can and can't take vehicles across that bridge. But as this court has held in McFarland, that sort of mild interference with his use of the right-of-way, that's not enough to start the accrual of the statute of limitations. There has to be an assertion of an adverse property interest by the government. And on Mr. Grohl's theory of his permit as an easement, that didn't come until the April 2nd 2008 letter, when the government said, your permit is not being reissued, you have to file for a new one subject to a new non-existing use. And so I would reiterate that this court does not even need to reach the merits here today. Judge Kennelly, you were perfectly right to point out that this was a pro se complaint, and that we should be drawing inferences in his favor, and the district court here failed to do that with regard to the statute of limitations, and did not even reach the merits in the first instance. And so the proper course of action would be to remand, to allow assessment of the merits in the first instance on 12b6. Do you think we should be remanding to allow him to amend, or just remanding, what should we say when we remand? We would ask that you remand to hear from his complaint on the face of his pro se complaint, with perhaps the possibility of amendment, but to hear properly on 12b6 the plausibility of his claims. And we maintain that he has plausibly plot theories of an easement here, but it would be proper for this to be heard in the first instance on the district court. And even with regard to the statute of limitations, it's our position that these claims are not time barred. We're in the post-Wilkins era, where this is not a jurisdictional question, and so on 12b6, all that matters is whether it's plausible that his claims are timely, and we submit that they are for the reasons stated above. So if there are no further questions, we ask that you reverse and remand. Thank you. Thank you both sides for the helpful arguments, and thank you to the students for taking this case pro bono. We really appreciate your excellent advocacy. Very challenging too, so thank you. Okay, we are going to take a five minute break before the next case.
judges: BERZON, FRIEDLAND, Kennelly